Douglas R. Ricks, OSB #044026
Daniel C. Bonham, OSB #183104
VANDEN BOS & CHAPMAN, LLP
319 SW Washington St., Ste. 520
Portland, OR 97204
Telephone: 503-241-4869
Fax: 503-241-3731

    Of Attorneys for Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 20-32571-dwh11 |
| U.S. Outdoor Holding LLC, | **CHAPTER 11, SUBCHAPTER V, PLAN** (Dated: 12/3/2020) |
| Debtor-in-Possession. | |

## SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE DATE SET FORTH IN THE NOTICE OF CONFIRMATION HEARING, WHICH WILL BE MAILED TO YOU SEPARATELY.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY DATE PROVIDED IN THE COURT'S ORDER FIXING TIME FOR FILING ACCEPTANCES OR REJECTIONS OF PLAN; AND NOTICE OF CONFIRMATION HEARING. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: VANDEN BOS & CHAPMAN, LLP, 319 SW WASHINGTON ST., STE. 520, PORTLAND, OR 97204.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Questions regarding this Plan may be directed to the Attorneys for the Debtor-in-Possession using the contact information provided above.

1

# ARTICLE 1
# HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

## 1.1. Nature of the Debtor's Business.

U.S. Outdoor Holding LLC is a limited liability company headquartered in Portland, Multnomah County, Oregon. Debtor is a retailer and outfitter for outdoor sports and activities, including camping, hiking, skiing, snowboarding, and more.

## 1.2. History of Business Operations of the Debtor

The Solomon family opened the U.S. Outdoor store in 1957 after having operated as the U.S. Army Surplus Store for a time before that. The Solomons moved the U.S. Outdoor Store to its location on Broadway Street in downtown Portland, Oregon in 1986 and had operated the store at that same location until 2017. Edward Ariniello purchased the store in 2017 and organized U.S. Outdoor Holding LLC on April 20 of that same year. On August 30, 2019, U.S. Outdoor Holding LLC received additional investment from Aaron Unverzagt and Alecia Pollard, which provided each of them with a membership interest in the Debtor and reduced Edward Ariniello's membership interest accordingly. Preceding the filing of this bankruptcy case, Debtor moved its operations to a new retail location in Northwest Portland. The Debtor's operation employs 13 employees (including salaried and hourly employees) at its Portland location.

## 1.3. Filing of the Debtor's Chapter 11 Case.

On September 4, 2020, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Portland, Oregon.

## 1.4. Legal Structure and Ownership.

Membership interests in the Debtor are as follows:

| | |
|---|---|
| Edward Ariniello: | 68.4% |
| Aaron Unverzagt: | 15.8% |
| Alecia Pollard: | 15.8% |

## 1.5. Debtor's Assets.

A Summary of the Debtor's Assets is included on **Exhibit 2**, attached hereto. The valuations for the assets are based on the Debtor's assessment of the market values.

## 1.6. Debtor's Liabilities.

A Claims Summary is included on **Exhibit 3**, attached hereto.

2

**1.7. <u>Current and Historical Financial Conditions.</u>**

The Debtor's Financial Performance for 2017, 2018, and 2019 are summarized on **Exhibit 5**, attached hereto. A balance sheet and profit and loss statement for October 2020 that were included with most recent Rule 2015 Report are also included with **Exhibit 5**.

**1.8. <u>Events Leading to the Filing of the Bankruptcy Case.</u>**

The COVID-19 pandemic, social unrest in Downtown Portland, and the dramatic customer move to online retail from brick-and-mortar stores has rendered the Debtor's previous business model untenable. Leasing a large retail space in Downtown Portland became impossible to justify, and the Debtor's recent move attempts to find a more sustainable operation.

In addition to the above, Debtor's bankruptcy filing has been precipitated by the financing related to the acquisition of the Debtor by Edward Ariniello. SMI, the Creditor for that financing, has a significant claim but has failed to properly perfect its security interest in the Debtor's assets. Debtor's position is that Lender's security interest is avoidable in bankruptcy and SMI's claim would then be treated as wholly unsecured.

SMI is also affiliated with the Debtor's now-former landlord. As noted above, that lease was for an above-market rate and comprised a location and space that were incompatible with the Debtor's needs and financial situation. Debtor has rejected that lease and intends to assume the lease for its new location.

**1.9. <u>Significant Events During the Bankruptcy Case.</u>**

The Debtor has taken a number of steps in anticipation of the filing and confirmation of this Plan. These include, but are not limited to, the following:

- Approval on use of cash collateral through the anticipated Confirmation Date;
- Applications to employ General Counsel, a professional CFO, and a tax professional;
- Relocation to a more sustainable retail location and rejection of the lease for the prior business location;
- Outreach and agreement with a number of important vendors to secure deliveries of new inventory on a prepaid or COD basis; and
- Dialogue and consultation with the Trustee to attempt to reach a consensual Plan.

**1.10. <u>Projected Recovery of Avoidable Transfers.</u>**

The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation by May 31, 2021 and retains all rights to pursue any actions arising under chapter 5 of the Code after the Confirmation Date. If you

3

received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer. Any funds recovered from such avoided transfers shall be used to make additional payments to Creditors under the Plan.

## ARTICLE 2
## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1.   Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

### A.   Administrative Expenses.

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.      If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt

4

incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.	If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.	Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | None | N/A |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | N/A |
| Administrative Rent Expense | $30,000 (subject to allowance and any objections) | Paid in full from Initial Plan Payment |
| Professional fees, as approved by the Bankruptcy Court | $60,000 | Upon application under §330 and after Bankruptcy Court approval, paid in full from Initial Plan Payment |
| Subchapter V Trustee | $10,000 | Upon application under §330 and after Bankruptcy Court approval, paid in full from Initial Plan Payment |
| TOTAL | $100,000 | |

## B.	Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a

5

period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority | Estimated Amount Owed | Treatment |
|---|---|---|
| IRS | $59,642 | This Claim will be paid pursuant to both (1) the stated annual payments in **Exhibit 1** and (2) on a pro rata basis. Provided, however, that any priority claims under § 507(a)(8) of an amount less than $2,000 may be prepaid at any time as a matter of administrative convenience. |
| ODR | $24,260 | This Claim will be paid pursuant to both (1) the stated annual payments in **Exhibit 1** and (2) on a pro rata basis. Provided, however, that any priority claims under § 507(a)(8) of an amount less than $2,000 may be prepaid at any time as a matter of administrative convenience. |
| DCBS | $1,127 | This Claim will be paid pursuant to both (1) the stated annual payments in **Exhibit 1** and (2) on a pro rata basis. Provided, however, that any priority claims under § 507(a)(8) of an amount less than $2,000 may be prepaid at any time as a matter of administrative convenience. |
| OED | $18,169 | This Claim will be paid pursuant to both (1) the stated annual payments in **Exhibit 1** and (2) on a pro rata basis. Provided, however, that any priority claims under § 507(a)(8) of an amount less than $2,000 may be prepaid at any time as a matter of administrative convenience. |

## 2.2. Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A. Classes of Secured Claims.

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class | Description | Claim Amount | Impairment | Treatment |
|-------|-------------|--------------|------------|-----------|
| 1 | SBA | $150,154.11 | Unimpaired | The Claim in this Class shall be treated in accordance with the applicable agreements with the SBA, including, but limited to, payments to be made directly to the SBA in the amount of $731 per month beginning in June 2021 and continuing in such amount through June 2050. |
| 2 | Tecnica | $50,297.91 | Impaired | The Claim in this Class is modified to provide for annual payments beginning on the Initial Payment Due Date with subsequent payments in January of each year through the year 2024 as outlined on **Exhibit 1**. Class 2 shall accrue interest at the rate of 4.25% per annum (WSJ prime rate as of 12/3/2020 of 3.25% plus a 1% risk premium) from the confirmation date. |
| 3 | Burton | $64,302.43 | Impaired | The Claim in this Class is modified to provide for annual payments beginning on the Initial Payment Due Date with subsequent payments in January of each year through the year 2024 as outlined on **Exhibit 1**. Class 3 shall accrue interest at the rate of 4.25% per annum (WSJ prime rate as of 12/3/2020 of 3.25% plus a 1% risk premium) from the confirmation date. |

| Class | Description | Claim Amount | Impairment | Treatment |
|-------|-------------|--------------|------------|-----------|
| 4 | NFI | $74,567.20 | Impaired | The Claim in this Class is modified to provide for annual payments beginning on the Initial Payment Due Date with subsequent payments in January of each year through the year 2024 as outlined on **Exhibit 1**. Class 4 shall accrue interest at the rate of 4.25% per annum (WSJ prime rate as of 12/3/2020 of 3.25% plus a 1% risk premium) from the confirmation date. |
| 5 | IRS | $92,733.84 | Impaired | The Claim in this Class will be paid in annual payments beginning on the Initial Payment Due Date with subsequent payments in January of each year through the year 2024 as outlined on **Exhibit 1**. Class 5 shall accrue interest at the rate specified by § 511(b) from the confirmation date. |
| 6 | Multnomah County | $1,609.57 | Unimpaired | The Claim in this Class will be paid in its entirety (together with interest at the rate allowed under § 511(b) and applicable non-bankruptcy law) from the Total Payment made on the Initial Payment Due Date as outlined on **Exhibit 1**. |
| 7 | Solomon Trust | $193,128.90 | Unimpaired | The Claim in this Class will be satisfied by surrender of the collateral subject to the landlord's lien (i.e. any personal property located on the property in connection with the rejected lease with Solomon Trust as of the date of such rejection) and Debtor's security deposit. |
| 8 | SMI | $1,269,784.99 | Impaired | The Disputed Claim in this Class is subject to avoidance as the asserted lien interest was based on a security interest, which was never perfected. Debtor shall file an adversary proceeding and claim objection no later than thirty (30) days after the Effective Date for avoidance of the asserted lien interest of SMI and disallowance of SMI's secured claim. If the Debtor prevails in the adversary proceeding and claim objection, then the claim in |

| Class | Description | Claim Amount | Impairment | Treatment |
|-------|-------------|--------------|------------|-----------|
|       |             |              |            | this Class shall be treated as a general unsecured claim as provided in ¶3(g) of this Plan. If the Debtor does not prevail in the adversary proceeding and claim objection, then within thirty (30) days of entry of a non-appealable judgment and order in such proceedings, Debtor shall amend the Plan to provide for treatment on the claim in this Class in the same manner as Class 2, herein. |

### B.    Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

Debtor believes that all Claims entitled to priority under §§ 507(a)(1), (4), (5), (6), and (7) of the Code have been satisfied post-petition.

### C.    Classes of General Unsecured Claims.

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 9, which contains general unsecured Claims against the Debtor:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 9 | General Unsecured Class | Impaired | The claims in this Class will be paid based on the amounts required by § 1129(a)(7), which the Debtor estimates to be $594,390.13 based on the liquidation analysis attached hereto as **Exhibit 2**. Creditors will receive approximately 16.5% of their claims. Payment of any dividend will depend on the amounts of allowed secured, priority (including costs of administration and the Debtor's attorney's fees), and nonpriority unsecured claims. Unsecured claims will be paid after payment of administrative and priority classes on a pro rata basis on an annual basis as outlined on **Exhibit 1**. |

9

### D. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company ("LLC"), the Equity Interest holders are the members.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 10 | Equity Interest Holders | Impaired | Equity Interest Holders shall retain such interest in the Debtor post-confirmation in the same manner as such interest was held pre-confirmation. |

### 2.3. <u>Treatment of Claims Objections.</u>

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4. <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[X] Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit 4** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. **Exhibit 4** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR [ ] Assumption and Assignment of
Executory Contracts and Unexpired Leases.

Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR [X] Rejection of Executory Contracts
and Unexpired Leases.

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on **Exhibit 4**, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

### 2.5. **Means for Implementation of the Plan.**

The Plan will be performed and implemented through continued business operations of the Reorganized Debtor. Based on the Debtor's Financial Projections, operations will generate sufficient sales to perform all of the obligations under the plan, which include payment in full on all Allowed Secured and Priority Tax Claims and payment to Allowed Unsecured Claims in an amount sufficient to satisfy the requirements of § 1129(a)(7) and § 1191(c).

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Managing Member of the Debtor immediately prior to the Effective Date shall serve as the initial Managing Member of the Reorganized Debtor on and after the Effective Date. Each member of the Debtor shall serve in accordance with applicable non-bankruptcy law and the Debtor's articles of organization, as each of the same may be amended from time to time.

### 2.6. **Payments.**

If the Plan is confirmed under § 1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to § 1194(a). Once the Trustee's service is terminated under §

1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7. **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

Edward Ariniello, Managing Member, Salary - $3,000 bi weekly

### 2.8. **Tax Consequences of the Plan.**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following are the anticipated tax consequences of the Plan: (1) Assuming the Plan is confirmed under § 1191(b), there will be no anticipated tax consequences to the Debtor of the Plan. Confirmation of the Plan under § 1194(a) would general a loss of tax attributes and higher income tax liability during the performance of the Plan; (2) Debtor is unaware of any tax consequences on Creditors of any discharge, and any tax consequences of receipt of Plan consideration after Confirmation.

### 2.9. **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in **Exhibit 1.**

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1. **Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on the Initial Payment Due Date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as **Exhibit 1** (referenced in § 2.9, above).

12

### 3.2. **Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit 1 (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post- confirmation taxes, of $370,811. The final Plan payment is expected to be paid on January 31, 2024.

The Debtor's financial projections assume a modest level of year-over-year sales growth (less than 5% per year) and assume increases in operating expenses at the same rate. This is consistent with past market experience, with the exception of the past year (due to the unexpected and overwhelming impact of the COVID-19 pandemic).

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections**.

### ARTICLE 4
### LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit 2**.

### ARTICLE 5
### DISCHARGE.

### 5.1. **Discharge As § 1141(d)(3) is not Applicable.**

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor

13

a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1)     on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2)     if applicable, of the kind specified in section 523(a) of this title.

**ARTICLE 6**
**GENERAL PROVISIONS.**

### 6.1.     Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.     Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.     Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.     Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this

14

Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under § 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.** **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.** **Nonwaiver of Rights.**

Notwithstanding confirmation of the Plan, Debtor shall retain and does not waive any offsets, counterclaims, or recoupment against any Creditor. Furthermore, confirmation of the Plan shall not divest or otherwise disqualify the Debtor for any discount, forgiveness, or other relief from any Claim provided for in the Plan, including, but not limited to, any forgiveness available pursuant to Section 1106 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), any rules implementing the CARES Act, or any other section of the CARES Act.

**6.7.** **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.8.** **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7**
**ATTACHMENTS**

The following documents accompany the Plan:

**Exhibit 1 – Debtor's Financial Projections and Schedule of Plan Payments**
**Exhibit 2 – Liquidation Analysis**
**Exhibit 3 – Claim Summary**
**Exhibit 4 – Table of Assumed Leases**
**Exhibit 5 – Debtor's Historical Financial Performance**
**Exhibit 6 – Ballot**

**ARTICLE 8**
**FREQUENTLY ASKED QUESTIONS**

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

16

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned will be provided separately. Ballots should be mailed to the following address: Vanden Bos & Chapman, LLP, Attn: Colin, 319 SW Washington St., Ste. 520, Portland, OR 97204.  Must be returned pursuant to the Court's **Order Fixing Time for Filing Acceptances or Rejections of Plan; and Notice of Confirmation Hearing.**

**How Do I Determine When and How Much I Will Be Paid?** In Article 2.2 and **Exhibit 1**, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9
## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5.** **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.** **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.** **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.** **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.** **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as **amended** and codified as Title 11, United States Code.

**9.11.** **Bankruptcy Court**: The United States Bankruptcy Court for the District of Oregon.

**9.12.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.** **Burton**: The Burton Corporation.

**9.14.** **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.15.** **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which U.S. Outdoor Holding LLC is the Debtor-in-Possession.

**9.16.** **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.17.** **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.18.** **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.19.** **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the **Confirmation** Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.20.** **Confirmation Hearing**: The hearing to be held to consider confirmation of the Plan.

**9.21.** **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.22.** **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.23.** **DCBS**: Oregon Department of Consumer and Business Services.

**9.24.** **Debtor** and **Debtor-in-Possession**: U.S. Outdoor Holding LLC, the debtor-in-possession in this Chapter 11 Case.

**9.25.** **Disputed Claim:** Any claim against the Debtor pursuant to Section **502** of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.26.** **Distributions**: The property **required** by the Plan to be distributed to the holders of Allowed Claims.

**9.27.** **Effective Date**: That date which is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.28.** **Equity Interest**: An ownership **interest** in the Debtor.

**9.29.** **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.30.** **Final Order**: An order or judgment of the Bankruptcy Court that has not **been** reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.31.** **IRC:** The Internal Revenue Code.

**9.32.** **IRS**: The Internal Revenue Service.

**9.33.** **Initial Payment Due Date**: January 31, 2021.

**9.34.** **Initial Plan Payment**: The **payment** to be made on the Initial Payment Due Date.

**9.35.** **Multnomah County**: Multnomah **County** Department of Revenue and Taxation.

**9.36.** **NFI**: National Funding, Inc.

**9.37.** **ODR:** Oregon Department of Revenue.

**9.38.** **OED:** Oregon Employment Department.

**9.39.** **Petition Date**: **September** 4, 2020, the date the chapter 11 petition for relief was filed.

**9.40.** **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.41.** **Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.42.** **SBA**: The U.S. Small Business Administration.

**9.43.** **SMI**: Solomon Management, Inc.

**9.44.** **Solomon Trust**: Robert D. Solomon, in his capacity as Trustee of the Mervin Solomon GST Trust UW 9-29-2008.

**9.45.** **Tecnica**: Tecnica Group USA Corp. **Reorganized Debtor**: The Debtor after the Effective Date.

**9.46.** **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.47.** **Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.48.** **Trustee**: Kenneth Eiler, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.49.** **Unsecured Creditor**: Any Creditor that holds a Claim in the **Chapter** 11 case which is not a secured Claim.

**9.50.** **WSJ**: The Wall Street Journal.

Dated: <u>December 3, 2020</u>                    Respectfully submitted;

VANDEN BOS & CHAPMAN, LLP              U.S. OUTDOOR HOLDINGS LLC


By:/s/Douglas R. Ricks_____              By:/s/ Edward A.  Ariniello_____
    Douglas R. Ricks, OSB #044026                Edward A. Ariniello, Manager/Member
    Of Attorneys for Debtor-in-Possession         Debtor-in-Possession

**US Outdoor Holding, LLC - Case No. 20-32571-dwh11**

| | | | | Beginning Cash | * | 300,000 | 512,712 | 429,118 | 469,456 |
|---|---|---|---|---|---|---|---|---|---|

| CLASS | CREDITOR NAME | CLAIM AMOUNT | INTEREST RATE | Due 1/31/21 | Due 1/31/22 | Due 1/31/23 | Due 1/31/24 |
|---|---|---|---|---|---|---|---|
| Admin | Vanden Bos & Chapman | 50,000 | 0% | 50,000 | 5,000 | 5,000 | 0 |
| Admin | CFO Selections, LLC | 5,000 | 0% | 6,000 | 7,500 | 5,000 | 0 |
| Admin | Willamette Valley Accounting | 4,000 | 0% | 4,000 | 4,000 | 4,000 | 0 |
| Admin | Solomon Trust (precautionary) | 30,000 | 0% | 30,000 | 0 | 0 | 0 |
| Admin | Subchapter V Trustee | 10,000 | 0% | 10,000 | 0 | 0 | 0 |
| | Subtotal: | | | 100,000 | 16,500 | 14,000 | 0 |
| | | | | | | | |
| Class 1 | US Small Business Admin | 150,154 | 3.75% | 5,117 | 8,772 | 8,772 | 8,772 |
| Class 2 | Tecnica Group USA Corp | 50,298 | 4.25% | 4,500 | 49,973 | 0 | 0 |
| Class 3 | The Burton Corporation | 64,302 | 4.25% | 8,200 | 61,335 | | |
| Class 4 | National Funding Inc | 74,567 | 4.25% | 9,500 | 71,136 | | |
| Class 5 | IRS | 92,734 | 3.00% | 6,000 | 92,202 | | |
| Class 6 | Multnomah County | 1,610 | 16.00% | 1,610 | 0 | 0 | 0 |
| Class 7 | Solomon Trust (see Class 9) | 193,129 | 0.00% | 0 | 0 | 0 | 0 |
| Class 8 | Solomon Management (see Class 9) | 1,269,785 | 0.00% | 0 | 0 | 0 | 0 |
| | Subtotal: | | | 34,927 | 283,418 | 8,772 | 8,772 |
| | | | | | | | |
| Priority | IRS | 59,642 | 3.00% | 6,000 | 57,094 | 0 | 0 |
| Priority | ODR | 24,260 | 6.00% | 3,000 | 24,079 | | |
| Priority | DCBS | 1,127 | 6.00% | 1,127 | 0 | 0 | 0 |
| Priority | Employment Dept | 18,169 | 6.00% | 2,500 | 17,765 | | |
| | Subtotal: | | | 12,627 | 98,938 | 0 | 0 |
| | | | | | | | |
| Class 9 | General Unsecured Creditors | 3,600,085 | 0% | 0 | 50,000 | 323,795 | 323,795 |
| | Subtotal: | | | 0 | 50,000 | 323,795 | 323,795 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Total Plan Payments: | | | 147,554 | 448,856 | 346,567 | 332,567 |
| | Net Cash Carry: | | | 152,446 | 63,856 | 82,551 | 136,889 |

**\* Initial $300,000 assumes $150,000 cash on hand and $150,000 in additional financing in the form of Notes convertible to equity.**

Exhibit 1 Page 1 of 4

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

Exhibit 1 Page 2 of 4

# US Outdoor Holding, LLC
## Income Statement Projections

| | % Inc. | Jan 21 | Feb 21 | Mar 21 | Apr 21 | May 21 | Jun 21 | Jul 21 | Aug 21 | Sep 21 | Oct 21 | Nov 21 | Dec 21 | 2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | | 152,446.00 | 128,205.49 | 92,626.02 | 58,656.93 | 54,876.49 | 64,030.45 | 75,054.82 | 82,754.71 | 98,610.02 | 132,636.91 | 217,531.41 | 331,328.80 | |
| **Revenue** | | | | | | | | | | | | | | |
| 46100 · eCommerce Sales | 50% | 175,606 | 131,450 | 135,750 | 87,540 | 105,000 | 112,000 | 119,098 | 121,500 | 160,020 | 272,550 | 338,100 | 473,340 | 2,231,954 |
| 46200 · In-Store Sales | 0% | | | | | | | | | | | | | |
| 46201 · Paypal | | 13,800 | 12,650 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 11,500 | 11,500 | 129,450 |
| 46202 · Amazon | | 9,100 | 8,450 | 7,800 | 7,800 | 7,800 | 7,800 | 8,580 | 9,360 | 9,750 | 10,140 | 12,480 | 13,650 | 112,710 |
| 46200 · eCommerce Sales - Other | | 30,000 | 30,000 | 22,500 | 25,000 | 27,500 | 30,000 | 32,500 | 30,000 | 36,000 | 52,500 | 81,000 | 94,500 | 491,500 |
| 46000 · Merchandise Sales - Other | | 1,500 | 1,500 | 1,500 | 0 | 0 | 1,500 | 2,000 | 3,000 | 1,500 | 0 | 0 | 0 | 12,500 |
| 48300 · Vendor Discounts Given | | | | | | | | | | | | | | |
| 48500 · Refunds and Returns | | -550 | -550 | -550 | -550 | -550 | -478 | -511 | -494 | -558 | -726 | -1,050 | -1,197 | -7,763 |
| 49000 · Sponsorship and Commissions | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Revenue** | | 229,456 | 183,500 | 177,000 | 129,790 | 149,750 | 160,822 | 171,667 | 173,366 | 216,713 | 344,464 | 442,030 | 591,794 | 2,970,352 |
| **Cost of Goods Sold** | | | | | | | | | | | | | | |
| 50000 · Cost of Goods Sold (Inventory) | 50% | 114,142 | 91,282 | 88,048 | 64,564 | 74,493 | 80,000 | 85,395 | 86,241 | 107,803 | 171,352 | 219,687 | 294,386 | 1,477,592 |
| 50090 · Inventory - Freight -In | 0% | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 |
| 50100 · Cost of Sales | | | | | | | | | | | | | | |
| 59700 · eComm | Online Services | 10% | 5,290 | 5,110 | 4,030 | 4,280 | 4,530 | 4,780 | 5,108 | 4,936 | 5,575 | 7,264 | 10,498 | 11,965 | 73,368 |
| 59800 · Merchant Account Fees | 3% | 7,572 | 6,056 | 5,841 | 4,283 | 4,942 | 5,307 | 5,665 | 5,721 | 7,152 | 11,367 | 14,587 | 19,529 | 98,022 |
| Total 50100 · Cost of Sales | 10% | 12,862 | 11,166 | 9,871 | 8,563 | 9,472 | 10,087 | 10,773 | 10,657 | 12,727 | 18,631 | 25,085 | 31,494 | 171,388 |
| 55020 · Rental Fleet | 0% | 0 | 0 | 0 | 0 | 48 | 3,000 | 7,500 | 56 | 70 | 111 | 4,500 | 4,500 | 19,785 |
| 65040 · Repair Shop Expenses | 0% | 300 | 0 | 0 | 0 | 23 | 25 | 300 | 27 | 34 | 350 | 350 | 350 | 1,759 |
| 68200 · Postage/ Shipping | 5% | 2,645 | 2,555 | 2,015 | 2,140 | 2,265 | 2,390 | 2,554 | 2,468 | 2,788 | 3,632 | 5,249 | 5,983 | 36,683 |
| **Total COGS** | 70% | 130,074 | 105,127 | 100,059 | 75,392 | 86,426 | 95,628 | 106,647 | 99,574 | 123,546 | 194,202 | 255,196 | 336,837 | 1,708,107 |
| **Gross Profit** | | 99,382 | 78,373 | 76,941 | 54,398 | 63,324 | 65,194 | 65,020 | 73,793 | 93,167 | 150,262 | 186,835 | 254,956 | 1,261,645 |
| *Gross Margin %* | | 43% | 43% | 43% | 42% | 42% | 41% | 38% | 43% | 43% | 44% | 42% | 43% | 42% |
| *Product Margin %* | | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% |
| **Expense** | | | | | | | | | | | | | | |
| **General & Administrative** | | | | | | | | | | | | | | |
| 60211 · Fuel | | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 1,500 |
| 60201 · Automobile Expense - Other | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| 60300 · Parking and Tolls | | 750 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 750 |
| 60400 · Bank Service Charges - Other | | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 480 |
| 61700 · Computer and Internet Expenses | | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 13,200 |
| 63300 · Liability Insurance | | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 2,550 | 30,600 |
| 64300 · Meals and Entertainment 50% | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| 64310 · Meals and Entertainment 100% | | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 2,700 |
| 64400 · Travel | | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| 64900 · Office Supplies | | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 1,925 | 23,100 |
| 64950 · Software Subscription Expense | | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 |
| 66700 · Professional Fees | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| 66900 · Reconciliation Discrepancies | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 68800 · Licenses and Fees | | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 5,400 |

Exhibit 1 Page 3 of 4

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

Exhibit 1 Page 3 of 4

US Outdoor Holding, LLC

| | % Inc. | Jan 21 | Feb 21 | Mar 21 | Apr 21 | May 21 | Jun 21 | Jul 21 | Aug 21 | Sep 21 | Oct 21 | Nov 21 | Dec 21 | 2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total General & Administrative | | 10,965 | 10,215 | 10,215 | 10,215 | 10,215 | 10,215 | 10,215 | 10,215 | 10,215 | 10,215 | 10,215 | 10,215 | 123,330 |
| Occupancy | | | | | | | | | | | | | | |
| 61100 · Display & Decor Expense | | 100 | 100 | 100 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 300 |
| 63600 · Janitorial Expense | | 250 | 250 | 250 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 750 |
| 64800 · Furniture & Fixtures < $2500 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 66300 · Business Tax | | 500 | 500 | 500 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,500 |
| 67100 · Rent Expense | | 30,000 | 30,000 | 30,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 90,000 |
| 67200 · Repairs and Maintenance | | 750 | 750 | 750 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,250 |
| 67250 · Small Equipment | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 68601 · Telephone Expense | | 725 | 725 | 725 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2,175 |
| 68600 · Utilities - Other | | 3,100 | 3,100 | 3,100 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9,300 |
| Total Occupancy | | 35,425 | 35,425 | 35,425 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 106,275 |
| Sales & Marketing | | | | | | | | | | | | | | |
| 60180 · Advertising and Promotion | | 7,486 | 5,910 | 5,122 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 18,518 |
| 60184 · Dues and Memberships | | 136 | 108 | 93 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 337 |
| 60187 · Marketing/Public Relation | | 1,601 | 1,264 | 1,096 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3,962 |
| 60188 · Events & Classes | | 787 | 621 | 538 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,947 |
| 60189 · Trade Show Expenses | | 4,698 | 3,709 | 3,215 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 11,622 |
| 64500 · Gifts < $25 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 64600 · Gifts > $25 | | 145 | 114 | 99 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 358 |
| 68300 · Printing/Reproduction | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 69800 · Consignment Sales Expense | | 584 | 461 | 400 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,445 |
| Total Sales & Marketing | | 15,437 | 12,187 | 10,562 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 38,187 |
| 60000 · Payroll Expenses | | | | | | | | | | | | | | |
| 60031 · Hourly Labor | | 34,440 | 29,400 | 28,140 | 22,190 | 18,760 | 18,760 | 21,560 | 22,820 | 23,800 | 28,980 | 36,288 | 36,540 | 321,678 |
| 60032 · Salary Labor | | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 192,000 |
| 60050 · Federal Payroll Taxes | | 4,287 | 3,859 | 3,752 | 3,246 | 2,955 | 2,955 | 3,193 | 3,300 | 3,383 | 3,823 | 4,444 | 4,466 | 43,663 |
| 60060 · State Payroll Taxes | | 2,018 | 1,816 | 1,766 | 1,528 | 1,390 | 1,390 | 1,502 | 1,553 | 1,592 | 1,799 | 2,092 | 2,102 | 20,547 |
| 63400 · Worker's Compensation | | 200 | 200 | 200 | 200 | 50 | 50 | 50 | 50 | 50 | 50 | 200 | 200 | 1,500 |
| 66400 · Pension Plan | | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| 66500 · Medical/Dental Insurance | | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 47,600 |
| 66550 · Other Employee Benefits | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| 66800 · Recruiting Expenses | | 50 | 50 | 50 | 0 | 0 | 0 | 0 | 0 | 100 | 100 | 150 | 50 | 550 |
| 68500 · Uniforms | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 48 | 0 | 48 |
| 60000 · Payroll Expenses - Other | | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Total 60000 · Payroll Expenses | | 61,795 | 56,125 | 54,708 | 47,964 | 43,955 | 43,955 | 47,105 | 47,723 | 48,925 | 54,753 | 63,222 | 63,358 | 633,586 |
| Total Expense | | 123,623 | 113,953 | 110,910 | 58,179 | 54,170 | 54,170 | 57,320 | 57,938 | 59,140 | 64,968 | 73,437 | 73,573 | 901,379 |
| Net Income | | -24,241 | -35,579 | -33,969 | -3,780 | 9,154 | 11,024 | 7,700 | 15,855 | 34,027 | 85,295 | 113,397 | 181,384 | 360,266 |

Exhibit 1
Page 3 of 4

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

| US Outdoor Holding, LLC | Forecast | Forecast | Forecast |
|---|---|---|---|
| **Income Statement & Projections** | **2021** | **2022** | **2023** |
| In-Store Sales | 2,231,954 | 2,365,872 | 2,460,507 |
| eCommerce Sales | 733,660 | 777,680 | 808,787 |
| Merchandise Sales - Other | 12,500 | 13,250 | 13,780 |
| **Total Revenue** | **2,970,352** | **3,148,573** | **3,274,516** |
| **Total COGS** | 1,708,707 | 1,866,339 | 1,940,992 |
| **Gross Profit** | 1,261,645 | 1,282,234 | 1,333,524 |
| *Gross Margin %* | *42.5%* | *40.7%* | *40.7%* |
| Total General & Administrative | 123,330 | 127,030 | 130,841 |
| Total Occupancy | 106,275 | 110,526 | 114,947 |
| Total Sales & Marketing | 38,187 | 39,333 | 40,513 |
| Total Payroll Expenses | 633,586 | 640,084 | 660,317 |
| **Total Expense** | 901,379 | 916,973 | 946,618 |
| **Net Income** | **360,266** | **365,261** | **386,905** |
| **Beginning Cash:** | 300,000 | 152,446 | 63,856 |

Exhibit 1 Page 4 of 4

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

| LIQUIDATION ANALYSIS | | | | | | |
|---|---|---|---|---|---|---|
| **Real Estate** | | | | | | |
| Location | Estimated Gross Sales Price/Value | Commission & Closing Costs (est. 7%) | Subtotal | Less Liens/ Mortgages | Net to Seller Before Taxes | Available for Creditors |
| NONE | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Subtotal, Equity (if any) in Real Estate** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |
| | | | | | | |
| **Schedule B - Personal Property** | | | | | | |
| Asset | Value | Commission & Closing Costs (est. 7%) | Lienholder | Less Liens/ Mortgages | Net Value | Available for Creditors |
| Cash Accounts | 313,603.00 | | IRS/SBA/Mult Cnty | 313,603.00 | 0.00 | 0.00 |
| Landlord security deposit | 50,000.00 | | | 50,000.00 | 0.00 | 0.00 |
| Solomn Trust - Repair prepayment | 100,000.00 | | | 0.00 | 100,000.00 | 100,000.00 |
| Inventory as of 10/25/20 | 670,334.67 | | Sec Vendors | 120,062.00 | 550,272.67 | 550,272.67 |
| Office Furniture | 4,005.00 | 280.35 | | 0.00 | 3,724.65 | 3,724.65 |
| IT Hardware | 37,725.00 | 2,640.75 | | 0.00 | 35,084.25 | 35,084.25 |
| Photography Equipment | 725.00 | 50.75 | | 0.00 | 674.25 | 674.25 |
| 2003 Ford E350 | 15,500.00 | 1,085.00 | | 0.00 | 14,415.00 | 14,415.00 |
| Merchandise Fixtures | 53,295.50 | 3,730.69 | | 0.00 | 49,564.82 | 49,564.82 |
| Appliances | 370.00 | 25.90 | | 0.00 | 344.10 | 344.10 |
| Event Equipment | 1,835.00 | 128.45 | | 0.00 | 1,706.55 | 1,706.55 |
| Shop Equipment | 47,929.00 | 3,355.03 | | 0.00 | 44,573.97 | 44,573.97 |
| Store and Brand Signs | 2,825.00 | 197.75 | | 0.00 | 2,627.25 | 2,627.25 |
| Avoidance Claims [1] | 0.00 | | | 0.00 | 0.00 | 0.00 |
| Third Party Claims [1] | 40,000.00 | | | 0.00 | 40,000.00 | 40,000.00 |
| | | | | | | |
| **Subtotal, Equity (if any) in Personal Property** | **$1,338,147.17** | | | **$483,665.00** | **$842,987.51** | **$842,987.51** |
| | | | | | | |
| **TOTALS:** | **$1,338,147.17** | **$0.00** | **$0.00** | **$483,665.00** | **$842,987.51** | **$842,987.51** |
| | | | | | | |
| **FROM EQUITY IN REAL ESTATE:** | **$0.00** | | | | | |
| **FROM EQUITY IN PERSONAL PROPERTY:** | **$842,987.51** | | | | | |
| **TOTAL EQUITY AVAILABLE FOR CREDITORS** | **$842,987.51** | | | | | |
| | | | | | | |
| **LESS ADMINISTRATIVE EXPENSES:** | | | | | | |
| Vanden Bos & Chapman | $50,000.00 | | | | | |
| Solomon Trust | $30,000.00 | | | | | |
| | $0.00 | | | | | |
| Estimated Trustee Attorney & Accountant fees/costs | $20,000.00 | | | | | |
| | $100,000.00 | | ($100,000.00) | | | |
| | | | | | | |
| **LESS CHAPTER 7 TRUSTEE FEES:** | | | | | | |
| Calculation for Trustee's Commission | | | | | | |
| Sale Price of Real Property (Less Exemption) | $0.00 | | | | | |
| Sale Price of Personal Property (Less Exemption) | $842,987.51 | | | | | |
| Subtotal: | $842,987.51 | | | | | |
| | | | | | | |
| 25% - First $5,000 | $1,250.00 | | | | | |
| 10% - $5,000 - $50,000 | $4,500.00 | | | | | |
| 5% - $50,000 - $1,000,000 | $39,649.38 | | | | | |
| 3% over $1,000,000 | $0.00 | | | | | |
| | $45,399.38 | | ($45,399.38) | | | |
| | | | | | | |
| **Subtotal, Available for Creditors** | | | **$697,588.13** | | | |
| | | | | | | |
| **LESS PRIORITY CLAIMS:** | | | | | | |
| IRS | ($59,642.00) | | | | | |
| OR Emp. Dept | ($18,169.00) | | | | | |
| Dept of Cons. Fin | ($1,127.00) | | | | | |
| ODR | ($24,260.00) | | ($103,198.00) | | | |
| | | | | | | |
| **LESS SECURED CLAIMS:** | | | | | | |
| | | | $0.00 | | | |
| | | | | | | |
| **TOTAL AVAILABLE FOR UNSECUREDS:** | | | **$594,390.13** | | | |

[1] Avoidance Claims and Third-Party Claims are litigation claims with an unknown value and an unknown amount of fees and expenses to be incurred before any recovery is obtained.  As with any litigation claims, there is a risk that the claim will yield little or no recovery.  The values listed are merely estimates and do not reflect the debtor's maximum recovery, claim amount, a waiver to assert additional amounts, or a willingness to compromise any claims for the amounts listed.

| Class # | Claim # | Creditor Name | Amt. Owed Per Schedule F | Amt. Owed Per Claim | Difference | Allowed Amount |
|---|---|---|---|---|---|---|
| **SECURED** | | | | | | |
| Class 1 | 13 | The Small Business Administration | $ 150,000.00 | $ 150,154.11 | $ (154.11) | $ 150,154.11 |
| Class 2 | 31 | Technica Group USA Corp | $ 4,005.38 | $ 50,297.91 | $ (46,292.53) | $ 50,297.91 |
| Class 3 | 24 | The Burton Corporation | $ 56,123.18 | $ 64,302.43 | $ (8,179.25) | $ 64,302.43 |
| Class 4 | 32 | National Funding | $ 35,035.43 | $ 74,567.20 | $ (39,531.77) | $ 74,567.20 |
| Class 5 | 3 | IRS | $ 93,115.20 | $ 92,733.84 | $ 93,115.20 | $ 92,733.84 |
| Class 6 | 19 | Multnomah County - DART | $ - | $ 1,609.57 | $ (1,609.57) | $ 1,609.57 |
| Class 7 | 33 | Solomon Trust (see Class 9) | $ - | $ 193,128.90 | $ - | $ 193,128.90 |
| Class 8 | 34 | Solomon Management (see Class 9) | $ - | $ - | $ - | $ - |
| | | | | | | |
| **PRIORITY** | | | | | | |
| | 3 | IRS | $ 23,004.71 | $ 59,642.26 | $ (36,637.55) | $ 59,642.26 |
| | 28 | ODR | $ 23,148.86 | $ 24,259.51 | $ (1,110.65) | $ 24,259.51 |
| | 1 | Department of Consumer Bus Svc | $ 1,187.16 | $ 1,126.61 | $ 60.55 | $ 1,126.61 |
| | 4 | Oregon Employment Department | $ 20,976.90 | $ 18,169.26 | $ 2,807.64 | $ 18,169.26 |
| | | **Subtotal Class** | **$ 68,317.63** | **$ 103,197.64** | **$ (34,880.01)** | **$ 103,197.64** |
| | | | | | | |
| **GENERAL UNSECURED CREDITORS** | | | | | $ - | |
| Class 9 | | Aaron Unverzagt | $ 50,000.00 | $ - | $ 50,000.00 | $ 50,000.00 |
| Class 9 | | Airblaster, LLC | $ 23,174.34 | $ - | $ 23,174.34 | $ 23,174.34 |
| Class 9 | 29 | Amer Sports | $ 100,463.28 | $ 147,840.74 | $ (47,377.46) | $ 147,840.74 |
| Class 9 | 9 | American Express | $ 54,867.51 | $ 54,867.51 | $ - | $ 54,867.51 |
| Class 9 | | Arcteryx Equipment | $ 54,401.76 | $ - | $ 54,401.76 | $ 54,401.76 |
| Class 9 | 15 | Black Crows Corp | $ 20,298.95 | $ 17,766.29 | $ 2,532.66 | $ 17,766.29 |
| Class 9 | | Bonfire | $ 3,105.63 | $ - | $ 3,105.63 | $ 3,105.63 |
| Class 9 | | Bula Sports USA, INC | $ 2,908.05 | $ - | $ 2,908.05 | $ 2,908.05 |
| Class 9 | 5 | C3 Worldwide, LLC | $ 43,565.52 | $ 35,325.18 | $ 8,240.34 | $ 35,325.18 |
| Class 9 | 20 | Capital One - Spark Card | $ 26,847.65 | $ 27,189.51 | $ (341.86) | $ 27,189.51 |
| Class 9 | | Carrie Lattimer-Ariniello | $ 76,318.01 | $ - | $ 76,318.01 | $ 76,318.01 |
| Class 9 | 14 | Chase Cardmember Service | $ 14,951.60 | $ 14,951.60 | $ - | $ 14,951.60 |
| Class 9 | | City of Portland | $ 1,550.50 | $ - | $ 1,550.50 | $ 1,550.50 |
| Class 9 | | Clockwork Brand Management | $ 862.13 | $ - | $ 862.13 | $ 862.13 |
| Class 9 | 7 | Conductor | $ 6,750.00 | $ 27,000.00 | $ (20,250.00) | $ 27,000.00 |
| Class 9 | | Criteo Corp | $ 5,788.65 | $ - | $ 5,788.65 | $ 5,788.65 |
| Class 9 | | Dakine Inc. | $ 46,744.87 | $ - | $ 46,744.87 | $ 46,744.87 |
| Class 9 | 10 | DC Shoes/Boardriders Wholesale | $ 6,352.40 | $ 6,352.40 | $ - | $ 6,352.40 |
| Class 9 | | Earth2O | unknown | $ - | unknown | unknown |
| Class 9 | | Goode | $ 1,422.61 | $ - | $ 1,422.61 | $ 1,422.61 |
| Class 9 | | Gordini | $ 5,893.85 | $ - | $ 5,893.85 | $ 5,893.85 |
| Class 9 | | Group Rossignol USA, Inc. | $ 41,856.88 | $ - | $ 41,856.88 | $ 41,856.88 |
| Class 9 | | Hestra Gloves, LLC | $ 7,643.80 | $ - | $ 7,643.80 | $ 7,643.80 |
| Class 9 | 6 | Huser Intergrated Technologies | $ 2,077.00 | $ - | $ 2,077.00 | $ - |
| Class 9 | 3 | IRS | $ - | $ 79,905.11 | $ (79,905.11) | $ 79,905.11 |
| Class 9 | | Jupa Sports | $ 5,531.68 | $ - | $ 5,531.68 | $ 5,531.68 |
| Class 9 | 27 | K2 Sports | $ 43,466.96 | $ 40,166.85 | $ 3,300.11 | $ 40,166.85 |
| Class 9 | 21 | KeyBank National Association | $ 266,607.00 | $ 267,892.56 | $ (1,285.56) | $ 267,892.56 |
| Class 9 | | KPTV Digital | $ 6,595.00 | $ - | $ 6,595.00 | $ 6,595.00 |
| Class 9 | | Kulkea | $ 1,914.49 | $ - | $ 1,914.49 | $ 1,914.49 |
| Class 9 | | Liberty Skis Corporation | $ 12,347.00 | $ - | $ 12,347.00 | $ 12,347.00 |
| Class 9 | | Loser Machine, LLC | $ 614.44 | $ - | $ 614.44 | $ 614.44 |
| Class 9 | 2 | Luxottica of America | $ 38,431.51 | $ 38,431.51 | $ - | $ 38,431.51 |

Exhibit 3 Page 1 of 2

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

| Class # | Claim # | Creditor Name | Amt. Owed Per Schedule F | Amt. Owed Per Claim | Difference | Allowed Amount |
|---------|---------|---------------|--------------------------|---------------------|------------|----------------|
| Class 9 |    | Mammut Sports Group | $ 14,762.34 | $ - | $ 14,762.34 | $ 14,762.34 |
| Class 9 | 23 | Marchon Eyewear, Inc. | $ 6,624.68 | $ 6,552.70 | $ 71.98 | $ 6,552.70 |
| Class 9 | 26 | Marker Volkl US, Inc. | $ 35,063.92 | $ 40,166.85 | $ (5,102.93) | $ 40,166.85 |
| Class 9 |    | Marmot Mountain, LLC | $ 19,590.00 | $ - | $ 19,590.00 | $ 19,590.00 |
| Class 9 |    | MEDIAmerica, Inc. | $ 7,700.00 | $ - | $ 7,700.00 | $ 7,700.00 |
| Class 9 |    | Mervin Solomon Estate | unknown | $ - | unknown | unknown |
| Class 9 | 22 | Motion Water Sports | $ 6,764.82 | $ 6,306.87 | $ 457.95 | $ 6,306.87 |
| Class 9 |    | Nidecker US | $ 5,517.65 | $ - | $ 5,517.65 | $ 5,517.65 |
| Class 9 |    | Nikita | $ 1,924.99 | $ - | $ 1,924.99 | $ 1,924.99 |
| Class 9 |    | Nils | $ 17,046.54 | $ - | $ 17,046.54 | $ 17,046.54 |
| Class 9 |    | Nitro Snowboards & L1 Outerwear | $ 22,082.52 | $ - | $ 22,082.52 | $ 22,082.52 |
| Class 9 |    | Nordica USA | $ 7,917.58 | $ - | $ 7,917.58 | $ 7,917.58 |
| Class 9 | 8  | Sport Obermeyer Ltd | $ 11,866.09 | $ 11,866.09 | $ - | $ 11,866.09 |
| Class 9 |    | O'neill Wetsuits LLC | $ 2,733.50 | $ - | $ 2,733.50 | $ 2,733.50 |
| Class 9 | 28 | ODR | $ - | $ 427.52 | $ (427.52) | $ 427.52 |
| Class 9 | 4  | Oregon Employment Department | $ - | $ 13,459.17 | $ (13,459.17) | $ 13,459.17 |
| Class 9 |    | Phillip A & Priscilla S. Unverzagt Trust | $ 150,000.00 | $ - | $ 150,000.00 | $ 150,000.00 |
| Class 9 | 35 | POC USA | $ - | $ 6,596.93 | $ (6,596.93) | $ 6,596.93 |
| Class 9 | 11 | Boardriders Wholesale | $ 6,082.51 | $ 6,414.71 | $ (332.20) | $ 6,414.71 |
| Class 9 |    | Rhythm Swin | unknown | $ - | unknown | unknown |
| Class 9 |    | Rosenthal & Rosenthal, INC | $ 6,845.93 | $ - | $ 6,845.93 | $ 6,845.93 |
| Class 9 |    | SCARPA North America, Inc | $ 3,839.57 | $ - | $ 3,839.57 | $ 3,839.57 |
| Class 9 |    | Si Products - Sunince | $ 2,405.67 | $ - | $ 2,405.67 | $ 2,405.67 |
| Class 9 |    | Smith Sport Optics | $ 27,706.16 | $ - | $ 27,706.16 | $ 27,706.16 |
| Class 9 | 16 | Sole Technology | $ 24,888.43 | $ 24,746.59 | $ 141.84 | $ 24,746.59 |
| Class 9 | 33 | Solomon Trust (see Class 9) | | $ 518,329.01 | $ - | $ 518,329.01 |
| Class 9 | 34 | Solomon Management (see Class 9) | $ 1,250,000.00 | $ 1,269,784.99 | $ (19,784.99) | $ 1,269,784.99 |
| Class 9 | 12 | Spark R&D | $ 5,941.00 | $ 5,941.00 | $ - | $ 5,941.00 |
| Class 9 |    | Strafe Outerwear | $ 1,526.53 | $ - | $ 1,526.53 | $ 1,526.53 |
| Class 9 |    | Thyssenkrupp Elevator | $ 832.01 | $ - | $ 832.01 | $ 832.01 |
| Class 9 |    | Triple T Trading Ltd | $ 764.50 | $ - | $ 764.50 | $ 764.50 |
| Class 9 |    | UPS | $ 3,828.94 | $ - | $ 3,828.94 | $ 3,828.94 |
| Class 9 | 25 | US Bank Credit Card | $ 28,237.50 | $ 28,725.14 | $ (487.64) | $ 28,725.14 |
| Class 9 |    | VF Outdoor | $ 10,782.10 | $ - | $ 10,782.10 | $ 10,782.10 |
| Class 9 | 30 | VF Outdoor | $ 15,366.66 | $ 15,366.66 | $ - | $ 15,366.66 |
| Class 9 | 30 | VF Outdoor | $ 36,420.74 | $ 36,420.04 | $ 0.70 | $ 36,420.04 |
| Class 9 | 30 | VF Outdoor LLC - Reef | $ 2,482.72 | $ 4,916.83 | $ (2,434.11) | $ 4,916.83 |
| Class 9 | 30 | VF - The North Face Outdoor, LLC | $ 91,892.16 | $ 91,892.16 | $ - | $ 91,892.16 |
| Class 9 |    | Vista Outdoor/Bell Sports | $ 4,139.65 | $ - | $ 4,139.65 | $ 4,139.65 |
| Class 9 |    | Volcom, LLC | $ 82,470.63 | $ - | $ 82,470.63 | $ 82,470.63 |
| Class 9 | 17 | Westlife Distribution LLC | $ 4,000.00 | $ 4,015.00 | $ (15.00) | $ 4,015.00 |
| Class 9 |    | Willamette Week | $ 2,950.00 | $ - | $ 2,950.00 | $ 2,950.00 |
| Class 9 |    | Workman | $ 1,046.70 | $ - | $ 1,046.70 | $ 1,046.70 |
| Class 9 |    | World Famous Sport, Inc. | $ 1,798.11 | $ - | $ 1,798.11 | $ 1,798.11 |
| Class 9 | 18 | Wolverine World Wide Inc. | $ - | $ 1,581.72 | $ (1,581.72) | $ 1,581.72 |
| | | | $ - | $ - | $ - | $ - |
| | | **Subtotal Class 9** | $ 2,899,195.92 | $ 2,851,199.24 | $ 566,325.69 | $ 3,600,084.55 |

Exhibit 3 Page 2 of 2

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

**EXHIBIT 4**

**LEASES AND EXECUTORY CONTRACTS
TO BE ASSUMED AND/OR REJECTED**

| NO. | U.S. OUTDOOR HOLDING, LLC - LEASES/EXECUTORY CONTRACTS | ASSUMED | REJECTED |
|---|---|---|---|
| 1 | Marketplace I & II, LLC, c/o PREM Group, Inc., 139 SE Taylor St., Portland, OR 97214 - Lease of commercial property located at 600 NW 14th Ave, Portland, OR dated 8/31/20; no cure due. | X | |

**Exhibit 4 - Page 1 of 1**

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

# Historical Financial Information for the Past 3 Years

| Income | 2019 | | |
|---|---|---|---|
| Gross receipts or sales I 1a I | $1,842,732.00 | | |
| Returns and allowances | $34,358.00 | | |
| Balance | $1,808,374.00 | | |
| Cost of goods sold | $949,820.00 | | |
| Gross profit. | $858,554.00 | | |
| Other Income | | | |
| Total income | $858,544.00 | | |
| | | | |
| **Expenses:** | | | |
| Salaries and wages (other than to partners) (less employment credits) | $395,048.00 | | |
| Guaranteed payments to partners | | | |
| 11 Repairs and maintenance | $1,601.00 | | |
| Bad debts | | | |
| Rent | $120,000.00 | | |
| Taxes and licenses | $53,833.00 | | |
| Interest | $158,019.00 | | |
| Depreciation | $2,626.00 | | |
| Employee benefit programs | $23,602.00 | | |
| Other deductions | $296,948.00 | | |
| Total Deductions | $1,051,677.00 | | |
| Ordinary Bsiness income (Loss) | -$193,123.00 | | |
| | | | |

The above information was taken from the Debtor's U.S. Return of Partnership Income. Copies of redacted return will be provided upon request to the U.S. Trustee's office and the Court.

**EXHIBIT 5 - PAGE 1 OF 9**

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

# Historical Financial Information for the Past 3 Years

| Income | 2018 | |
|---|---|---|
| Gross receipts or sales l 1a l | $6,167,166.00 | |
| Returns and allowances | $749,646.00 | |
| Balance | $5,417,520.00 | |
| Cost of goods sold | $2,629,102.00 | |
| Gross profit. | $2,788,418.00 | |
| Other Income | $21,541.00 | |
| **Total income** | $2,809,959.00 | |
| | | |
| **Expenses:** | | |
| Advertising | $105,614.00 | |
| Car and truck expenses | $9,622.00 | |
| Commissions and fees | $411.00 | |
| Depreciation and section 179 expense deduction | $17,440.00 | |
| Employee benefit programs | $113,127.00 | |
| Insurance | $27,552.00 | |
| Interest: | | |
| a) Mortgage | | |
| b) Other | $54,125.00 | |
| Legal and professional services | $63,448.00 | |
| Office expense | $27,888.00 | |
| Pension and profit-sharing plans | $9,177.00 | |
| Rent or lease: | | |
| a) Vehicles, machinery, and equipment | | |
| b) Other business property | $409,915.00 | |
| Repairs and maintenance | $11,759.00 | |
| Supplies | | |
| Taxes and licenses | $224,241.00 | |
| Travel and meals: | | |
| a) Travel | $9,106.00 | |
| b) Deductible meals | $3,651.00 | |
| Utilities | $35,413.00 | |
| Wages (less employment credits) | $1,333,640.00 | |
| Other expenses | $896,367.00 | |
| **Total Expenses** | $3,352,496.00 | |
| Tentative profit or (loss). | -$541,537.00 | |
| | | |
| | | |

The above information was taken from the Debtor's principal's 1040 - Schedule C Income Tax filing - Copies of the redacted return will be provided upon request to the U.S. Trustee's office and the Court.

**EXHIBIT 5 - PAGE 2 OF 9**

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

# Historical Financial Information for the Past 3 Years

| Income | 2017 | |
|---|---|---|
| Gross receipts or sales I 1a I | $4,255,919.00 | |
| Returns and allowances | | |
| Balance | $4,255,919.00 | |
| Cost of goods sold | $2,473,052.00 | |
| Gross profit. | $1,782,867.00 | |
| Other Income | $894.00 | |
| **Total income** | $1,783,761.00 | |
| | | |
| **Expenses:** | | |
| Advertising | $105,664.00 | |
| Car and truck expenses | $10,803.00 | |
| Commissions and fees | $411.00 | |
| Depreciation and section 179 expense deduction | $64,926.00 | |
| Employee benefit programs | $69,415.00 | |
| Insurance | $18,608.00 | |
| Interest: | | |
| a) Mortgage | | |
| b) Other | | |
| Legal and professional services | $48,188.00 | |
| Office expense | $13,882.00 | |
| Pension and profit-sharing plans | $8,297.00 | |
| Rent or lease: | | |
| a) Vehicles, machinery, and equipment | | |
| b) Other business property | $231,058.00 | |
| Repairs and maintenance | $13,246.00 | |
| Supplies | | |
| Taxes and licenses | $102,895.00 | |
| Travel and meals: | | |
| a) Travel | $3,738.00 | |
| b) Deductible meals | $3,191.00 | |
| Utilities | $22,224.00 | |
| Wages (less employment credits) | $891,118.00 | |
| Other expenses | $502,655.00 | |
| **Total Expenses** | $2,109,908.00 | |
| Tentative profit or (loss). | -$326,147.00 | |
| | | |
| | | |

The above information was taken from the Debtor's principal's 1040 - Schedule C Income Tax filing - Copies of the redacted return will be provided upon request to the U.S. Trustee's office and the Court.

**EXHIBIT 5 - PAGE 3 OF 9**

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

# US Outdoor Holding, LLC
## Balance Sheet
### As of October 31, 2020

| | Oct 31, 20 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 10000 · Checking Accounts | |
| 10038 · Key Bank - 3880 | 229,008.67 |
| 10052 · Key Bank - 5204 | 4,781.60 |
| 10054 · Key Bank - 5477 | 24,689.11 |
| **Total 10000 · Checking Accounts** | 258,479.38 |
| 10100 · Savings Accounts | 1.07 |
| 10500 · Clearing Accounts | 29,245.15 |
| 10800 · Petty Cash | 53.23 |
| 10810 · Cash Drawer | 220.00 |
| 10880 · Change Fund | 60.00 |
| **Total Checking/Savings** | 288,058.83 |
| **Other Current Assets** | |
| 12000 · Undeposited Funds | 626.00 |
| 12100 · Inventory Asset | 666,317.87 |
| 12300 · Prepaid Expenses | |
| 12314 · PrePaid Legal Fees | 25,000.00 |
| **Total 12300 · Prepaid Expenses** | 25,000.00 |
| 15100 · Security Deposits | 50,000.00 |
| **Total Other Current Assets** | 741,943.87 |
| **Total Current Assets** | 1,030,002.70 |
| **Fixed Assets** | |
| 15000 · Furniture and Equipment | 350.00 |
| 15500 · Vehicle | |
| 15570 · Accumulated Depreciation | -12,000.00 |
| 15500 · Vehicle - Other | 22,500.00 |
| **Total 15500 · Vehicle** | 10,500.00 |
| **Total Fixed Assets** | 10,850.00 |
| **Other Assets** | |
| 18000 · Goodwill | 661,424.92 |
| **Total Other Assets** | 661,424.92 |

**EXHIBIT 5 - PAGE 4 OF 9**

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

# US Outdoor Holding, LLC
## Balance Sheet
### As of October 31, 2020

|  | Oct 31, 20 |
|---|---|
| **TOTAL ASSETS** | **1,702,277.62** |
|  |  |
| **LIABILITIES & EQUITY** |  |
| **Liabilities** |  |
| **Current Liabilities** |  |
| **Accounts Payable** |  |
| 20000 · AP (Inventory) | 1,038,620.34 |
| 20100 · AP (Operations) | 95,930.71 |
| **Total Accounts Payable** | 1,134,551.05 |
| **Credit Cards** |  |
| 20590 · US Bnk CC-9137 Mstr Pymnts Only | 29,801.23 |
| 20600 · CC - Office Depot 5942 | 119.98 |
| 20601 · AMEX | 54,867.51 |
| 20660 · Capital One 5825 | 26,534.15 |
| 20675 · Chase 1023 | 14,731.17 |
| **Total Credit Cards** | 126,054.04 |
| **Other Current Liabilities** |  |
| 20680 · National Funding Loans | 31,058.10 |
| **20690 · SBA Loans** |  |
| 20691 · SBA Loan 71-09 | 266,607.00 |
| 20692 · SBA EDIL Loan | 10,000.00 |
| 26093 · EDIL Loan x1324 | 150,000.00 |
| **Total 20690 · SBA Loans** | 426,607.00 |
| 20700 · Gift Card Liabilities | 131,242.73 |
| 20990 · Corporate Tax Liability | 2,460.00 |
| **21010 · Payroll Liabilities** |  |
| **21100 · Payroll Tax Liabilities** |  |
| 21200 · Federal Payroll Liabilities | 118,287.80 |
| 21300 · State Payroll Liability | 46,886.14 |
| **Total 21100 · Payroll Tax Liabilities** | 165,173.94 |
| 21705 · Other Payroll Liabilities | 5,077.56 |
| **Total 21010 · Payroll Liabilities** | 170,251.50 |
| **Total Other Current Liabilities** | 761,619.33 |
| **Total Current Liabilities** | 2,022,224.42 |

**EXHIBIT 5 - PAGE 5 OF 9**

3:50 PM

11/20/20

Accrual Basis

# US Outdoor Holding, LLC
## Balance Sheet
### As of October 31, 2020

|  | Oct 31, 20 |
|---|---|
| **Long Term Liabilities** | |
| 28000 · Notes Payable Carrie Ariniello | 36,318.01 |
| 29000 · Notes Payable Solomon | 1,250,000.00 |
| 29100 · Notes Payable PUNVER | 150,000.00 |
| 29200 · Notes Payable AUNVER | 50,000.00 |
| **Total Long Term Liabilities** | 1,486,318.01 |
| **Total Liabilities** | 3,508,542.43 |
| **Equity** | |
| 31000 · Owners Equity | |
| 31001 · Note Equity - Prior Period | 101,567.75 |
| 31600 · Owners Equity - Ed Ariniello | |
| 31601 · CC - EA Personal 4957 | 176.25 |
| 31602 · CC - EA Personal 7388 | 231.03 |
| 31600 · Owners Equity - Ed Ariniello - Other | 637,519.82 |
| **Total 31600 · Owners Equity - Ed Ariniello** | 637,927.10 |
| 31700 · Owners Equity - A Unverzagt | 168,000.00 |
| 31701 · Owners Equity - A Pollard | 150,000.00 |
| **Total 31000 · Owners Equity** | 1,057,494.85 |
| 32000 · Retained Earnings | -2,245,002.57 |
| Net Income | -618,757.09 |
| **Total Equity** | -1,806,264.81 |
| **TOTAL LIABILITIES & EQUITY** | **1,702,277.62** |

EXHIBIT 5 - PAGE 6 OF 9

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

# US Outdoor Holding, LLC
## Profit & Loss
### October 2020

| | Oct 20 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| 46000 · Merchandise Sales | |
| 46100 · In-Store Sales | 67,093.30 |
| 46200 · eCommerce Sales | |
| 46201 · Paypal | 8,603.26 |
| 46200 · eCommerce Sales - Other | 11,228.62 |
| Total 46200 · eCommerce Sales | 19,831.88 |
| 46000 · Merchandise Sales - Other | 0.00 |
| Total 46000 · Merchandise Sales | 86,925.18 |
| 48300 · Vendor Discounts Given | 0.00 |
| **Total Income** | 86,925.18 |
| **Cost of Goods Sold** | |
| 5000 · Cost of Goods Sold (Inventory) | 55,614.82 |
| 50090 · Inventory - Freight -In | 868.44 |
| 50100 · Cost of Sales | |
| 50540 · Merchant Account Fees | 2,747.28 |
| 50560 · Postage-Freight Out | 3,199.40 |
| 50585 · Repair Shop Expenses | 1,493.95 |
| Total 50100 · Cost of Sales | 7,440.63 |
| **Total COGS** | 63,923.89 |
| **Gross Profit** | 23,001.29 |
| **Expense** | |
| General & Administrative | |
| 60201 · Automobile Expense | 65.30 |
| 60400 · Bank Service Charges | 102.83 |
| 61700 · Computer and Internet Expenses | |
| 61750 · eComm | Online Services | 3,342.54 |
| 61700 · Computer and Internet Expenses - Other | 456.88 |
| Total 61700 · Computer and Internet Expenses | 3,799.42 |
| 63300 · Liability Insurance | 2,912.04 |
| 64900 · Office Supplies | |
| 64940 · Store Supplies | 99.75 |
| 64900 · Office Supplies - Other | 613.97 |

EXHIBIT 5 - PAGE 7 OF 9

Case 20-32571-dwh11    Doc 90    Filed 12/03/20

## US Outdoor Holding, LLC
## Profit & Loss
### October 2020

|  | Oct 20 |
|---|---|
| Total 64900 · Office Supplies | 713.72 |
| 64950 · Software Subscription Expense | 965.44 |
| 66700 · Professional Fees | |
| 66720 · Accounting / Bookkeeping | 3,345.00 |
| 66740 · Design Fees | 2,850.00 |
| Total 66700 · Professional Fees | 6,195.00 |
| 66850 · Postage - G/A | 50.61 |
| 68900 · Licenses and Fees | 125.00 |
| Total General & Administrative | 14,929.36 |
| Occupancy | |
| 66300 · Business Tax | 2,421.72 |
| 67100 · Rent Expense | 9,000.00 |
| 67200 · Repairs and Maintenance | 633.18 |
| 68600 · Utilities | |
| 68601 · Telephone Expense | 412.24 |
| Total 68600 · Utilities | 412.24 |
| Total Occupancy | 12,467.14 |
| Sales & Marketing | |
| 60180 · Advertising and Promotion | 264.99 |
| 60187 · Marketing/Public Relation | 7,100.10 |
| Total Sales & Marketing | 7,365.09 |
| 60000 · Payroll Expenses | |
| 60010 · Labor | 33,894.39 |
| 60050 · Federal Payroll Taxes | 2,474.28 |
| 60060 · State Payroll Taxes | 828.14 |
| 63400 · Worker's Compensation | -589.39 |
| 64400 · Pension Plan | 489.00 |
| 66500 · Medical/ Dental Insurance | 4,762.89 |
| 66550 · Other Employee Benefits | 700.00 |
| 66800 · Recruiting Expenses | 45.00 |
| 60000 · Payroll Expenses - Other | 17.85 |
| Total 60000 · Payroll Expenses | 42,622.16 |
| Total Expense | 77,383.75 |
| Net Ordinary Income | -54,382.46 |
| Other Income/Expense | |
| Other Expense | |

**EXHIBIT 5 - PAGE 8 OF 9**

# US Outdoor Holding, LLC
## Profit & Loss
### October 2020

|  | Oct 20 |
| --- | --- |
| 80000 · Ask My Accountant | -149.66 |
| **Total Other Expense** | -149.66 |
| **Net Other Income** | 149.66 |
| **Net Income** | **-54,232.80** |

**EXHIBIT 5 - PAGE 9 OF 9**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

In re

U.S. Outdoor Holding, LLC

      Debtor-in-Possession.

Case No. 20-32571-dwh11

BALLOT FOR ACCEPTING OR
REJECTING DEBTOR'S PLAN

Filed By: _____ on:_____
         (Company or Creditor's Name)        (Date)

Number of your Class in the Plan: _____.

      The Plan referred to in this ballot can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in total dollar amount and more than one-half in number of Claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class rejecting it. To have your vote count, you must complete and return this ballot.

The undersigned: (check one box)

☐ Accepts        ☐ Rejects

the Debtor's Plan of Reorganization of the above-named Debtor.

Signed: _____ Title: _____ Phone No. _____

Street: _____ City:_____ State: ___ Zip: _____

      Return this ballot on or before the date specified in the court order accompanying this Plan to:

**DOUGLAS R. RICKS**
**ATTN: COLIN**
**BALLOTS**
The Spalding Building, Suite 520
319 S.W. Washington Street
Portland, Oregon 97204-2620
Phone: (503) 241-4869
Fax: (503) 241-3731

      **NOTICE: "THIS FORM DOES NOT CONSTITUTE A PROOF OF CLAIM AND MAY NOT BE USED TO FILE A CLAIM OR TO INCREASE ANY AMOUNT LISTED IN THE DEBTOR SCHEDULES."**

**Exhibit 6 – Page 1 of 1**